UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOSEPH KOWALCZYK and ALIL PERICIC,                   :
                                                     :
                              Plaintiffs,            :
                                                     :
              - against -                            :
                                                     :          **OPINION AND ORDER**
JOHN BARBARITE, SUE FLORA,                           :
GORDON JENKINS, and THE VILLAGE                      :          08-CV-6992 (ER)
OF MONTICELLO, a municipality of the State           :
of New York,                                         :
                                                     :
                              Defendants.            :
                                                     :
                                                     :
------------------------------------------------------------x

Appearances:

Gerald Orseck
Orseck Law Offices, P.C.
Liberty, New York
*Attorney for Plaintiffs*

Richard S. Sklarin
Miranda, Sambursky, Slone, Sklarin, Verveniotis, LLP
Elsmford, New York
*Attorney for Defendants*

Ramos, D.J.:

        Plaintiffs Joseph Kowalczyk ("Kowalczyk") and Alil Pericic ("Pericic," and collectively

"Plaintiffs") bring this action against Defendants John Barbarite ("Barbarite"), Gordon Jenkins

("Jenkins"), and the Village of Monticello (the "Village," and collectively "Defendants"),[1]

alleging violations of their substantive due process and equal protection rights pursuant to 42

U.S.C. §§ 1981 and 1983, and alleging that Defendants engaged in a conspiracy to interfere with

their civil rights pursuant to 42 U.S.C. §§ 1985 and 1986. Plaintiffs also state a cause of action

---

[1] Sue Flora was dismissed from this action by stipulation entered on November 17, 2011.  Doc. 62.

for declaratory relief pursuant to 42 U.S.C. § 1983 and pursuant to New York law.  Plaintiffs'
final cause of action arises pursuant to 42 U.S.C. § 1988(b) for attorneys' fees.  Kowalczyk now
moves for partial summary judgment on his substantive due process claim and a purported
procedural due process claim on the issue of liability only, and Defendants cross-move for
summary judgment in full.  For the reasons stated below, Plaintiff Kowalczyk's motion is
DENIED and Defendant's cross-motion is GRANTED.

## I. Factual Background

The following facts are undisputed unless otherwise indicated below.

### A. Plaintiff Kowalczyk's Property at 37-39 High Street

Joseph Kowalczyk, a Polish-born naturalized U.S. citizen, and a resident of Stamford,
Connecticut, purchased real property located at 37-39 High Street[2] in the Village on November
7, 2001, for $48,500.  Compl. ¶ 1(b); Kowalczyk's Stmt. Undisputed Facts in Supp. of Mot. for
Summ. J. Pursuant to Local Rule 56.1 ("Kowalczyk's 56.1 Stmt.") ¶¶ 1-2; Defs.' Stmt.
Undisputed Facts in Supp. of Mot. for Summ. J. Pursuant to Local Rule 56.1 (Defs.' 56.1 Stmt.")
¶ 4.  The property consisted of two buildings (the "front building" and the "back building").
Kowalczyk's 56.1 Stmt. ¶ 3.  The front building originally consisted of two residential units and
the back building originally consisted of six residential units and two commercial units.  Doc 68,
Ex. PP at 7; *see* Doc. 78, Ex. V.  37-39 High Street was, for a certain period of time before
Kowalczyk bought it, a lawful multiple dwelling nonconforming use.  *See* Doc. 68, Ex. S; Doc.
56-2, Ex. P.  The controversy surrounding his development of the property is rooted in whether it
was still a lawful nonconforming use at the time he purchased it pursuant to Village Code § 280-
43, which provides that "[t]he vacation of a nonconforming building or use for  a consecutive

---

[2] Throughout the evidence in the record, the property is referred to inconsistently as either 37-39 High Street, 39-41
High Street, 39 High Street, or 41 High Street.  The Court will refer to it as "37-39 High Street" henceforth.

period of one year shall be deemed a permanent vacation, and thereafter the building shall not be reoccupied except in conformity with the regulations of the district in which it is located, and the use shall not be resumed."  Doc. 68; Ex. T.

On December 9, 2001, Kowalczyk applied for a building permit to build stores and renovate eight apartments.  Doc. 80, ¶ 9.  On January 16, 2002, James Artale ("Artale"), the then Village Code Enforcement Officer, issued a permit to Kowalczyk for purposes of renovating two apartments in the back building.  Defs.' 56.1 Stmt. ¶ 5; Doc. 56-1, Ex. D.  Artale further sent Kowalczyk a letter on the same date, stating that the building permit was issued for the renovation of *only* two apartments in the back building and that no other work on the property was permitted.  Doc. 68, Ex. L.

On March 15, 2002, the remainder of Kowalczyk's December 9, 2001 application—to renovate the remaining residential and commercial units at 37-39 High Street—was officially denied by Richard Sush ("Sush"), the then Village Manager.  Doc. 68, Ex. N.  The denial was issued because Village Code required twelve parking spaces for the apartments and three parking spaces for the proposed store, but Kowalczyk's plan provided for only a total of five parking spaces.  *Id.*  Sush advised Kowalczyk that he could appeal the denial to the Zoning Board of Appeals and gave instructions on how to do so.  *Id.*  Indeed, on March 31, 2002, Kowalczyk filed an application for a zoning variance, requesting permission to have fewer parking spaces than required by Village Code for his proposed improvements to 37-39 High Street.  Doc. 68, Ex. O. A public hearing was scheduled in connection with Kowalczyk's request for May 9, 2002.  *Id.* Ex. O, Ex. P.

On May 9, 2002, Sharon Jankiewicz ("Jankiewicz"), the Village Attorney, sent a letter to Artale, stating that she had reviewed the denial of Kowalczyk's application for a building permit

3

and his subsequent application for a zoning variance.   Doc. 56-2, Ex. P.    In her opinion, Kowalczyk's applications were to "renovate an existing nonconforming use structure," and that it would be "improper to deny [either] application for renovations . . . based on insufficient parking."   *Id.*   She believed such a use was permissible under Village Code § 280-42, which states that a "nonconforming building or use may be continued but may not be changed to another nonconforming use."   *Id.*   Jankiewicz's letter suggests her belief that 37-39 High Street had not been left vacant for a period of time in excess of one year and that Plaintiff was merely rehabilitating—not expanding—the lawful nonconforming use, and therefore that Village Code § 280-43 was inapplicable.   Thus, believing that Jankiewicz's letter meant it was unnecessary to obtain a zoning variance for 37-39 High Street, Kowalczyk withdrew his application to the Zoning Board of Appeals.  Doc. 78 ¶ 18.

On May 14, 2002, Plaintiff received an additional building and zoning permit, which renewed the permit issued on January 16, 2002 as to two apartments in the back building, and granted Kowalczyk permission to rehabilitate four apartments in the front building, which originally consisted of only two apartments.  Kowalczyk's 56.1 Stmt. ¶ 5; Doc. 56-1, Ex. E; Doc. 68, Ex. PP at 7.    On July 14, 2002, Defendant Barbarite, before he became Deputy Village Manager, in his capacity as a private citizen, told Sush that he believed an illegal conversion, pursuant to Village Code §280-43, had occurred at 37-39 High Street.  Doc. 69, Ex. E; Doc. 68, Ex. T.  Sush replied to Barbarite that 37-39 High Street had been continuously occupied and was being maintained as a lawful nonconforming use.  Doc. 68, Ex. S.

Throughout 2005 and 2006, Sue Flora ("Flora"), the then Village Code Enforcement Officer, made several inspections of the construction at 37-39 High Street.  Defs.' 56.1 Stmt. ¶¶ 13-14.  On December 21, 2006, Flora inspected the premises and issued a conditional certificate

of occupancy to Kowalczyk for the four apartments in the front building, which was to expire on March 22, 2007.  Doc. 56-1, Ex. F.[3]  Additionally, on December 21, 2006, Kowalczyk received a building permit to renovate "four existing apartments [in the] rear portion of [the] building."  Doc. 56-1, Ex. G.

Barbarite has been a resident of the Village since 1979, and resides within close proximity to 37-39 High Street.  Doc. 69 ¶¶ 1, 12.  He was appointed Deputy Village Manager in February 2007, and soon thereafter he visited 37-39 High Street while Kowalczyk was renovating apartments in the back building.  Kowalczyk's 56.1 Stmt. ¶ 11.  Barbarite told Kowalczyk that despite the fact that he had been issued a building permit,  the work being performed was nonetheless in violation of various provisions of the Village Code and Multiple Residence Laws.  *Id.*; Doc. 69 ¶ 19.

On February 27, 2007, Barbarite sent a letter to Kowalczyk advising him that the conversion of the property into a multiple residence was in violation of law.  Doc. 56-1, Ex. H. Barbarite informed Kowalczyk that he would be required to submit plans by a licensed engineer if he wished to use the buildings as multiple dwellings, which would be subject to Planning Board approval.  *Id.*  On April 24, 2007, Barbarite sent another letter to Kowalczyk, stating that he had notified Kowalczyk on numerous occasions that all work at 37-39 High Street must cease until the necessary approvals were obtained, and threatened criminal charges if he did not stop construction.  *Id.*, Ex. I.  Barbarite claims to have personally observed evidence of continued construction work at 37-39 High Street after the issuance of both such letters.  Doc. 69 ¶ 24.

Defendant Barbarite was terminated as Deputy Village Manager in February 2008.  *Id*. ¶ 25.  In April 2008, one month after Defendant Jenkins was elected Mayor of the Village,

---

[3] There is no indication in the record before the Court that a final certificate of occupancy was issued to Kowalczyk for the four apartments in the front building until November 30, 2009—over two and one half years after the conditional certificate of occupancy expired.  Doc. 56-1, Ex. K.

Barbarite was appointed as Village Manager.  *Id.*; Defs.' 56.1 Stmt. ¶ 28.[4]  On May 7, 2008, Flora sent a letter to Kowalczyk stating that 37-39 High Street was in violation of the Multiple Residence Law, The Village Zoning Ordinances, and the New York State Building Code, and that the building would be vacated within thirty days due to unsafe conditions.  Doc. 68, Ex. HH. The letter stated that the violations included an

> illegal conversion of vacant property to multiple residences and a warehouse into a residence without an approved building and zoning permit.  The propert[y] conversions have several deficiencies and code violations causing the dwellings to be [un]inhabitable and unsafe to the occupants.

*Id.*  She further communicated that Kowalczyk was required to submit a report and plans from a licensed engineer or architect within thirty days showing how the property would be brought into compliance to prevent the property from being vacated.  *Id.*

Rather than submit the necessary plans, on May 19, 2008, Kowalczyk filed an application for renewal of the December 21, 2006 building permit he had been issued.  Doc. 68, Ex. KK; *see* Doc. 56-1, Ex. G.  On May 23, 2008, a meeting was held to discuss Kowalczyk's application, at which Kowalczyk, Barbarite and Jenkins were present, along with other Village officials.  Doc. 69, Ex. H.  Village representatives stated that Kowalczyk's property was in violation of the Multiple Residence Law and the Village Code because it had been vacant for several years at the time he purchased it, but Kowalczyk insisted that he had the right to make repairs.  *Id.*  Village officials stated that if he did not hire an engineer or architect to bring the property into compliance within a reasonable period of time, the Village "would take the necessary steps to order the buildings demolished."  *Id.*  Kowalczyk then filed a complaint in the instant matter before this Court on August 5, 2008.

---

[4] Barbarite was employed as Village Manager from April 2008 to December 2008, and again from April 2010 until his retirement on July 31, 2011.  Defs.' 56.1 Stmt. ¶ 29.

Sometime before June 15, 2009, Kowalczyk submitted a site plan for his property to the Planning Board.  Doc. 68, Ex. OO.  Defendant Jenkins reviewed the proposed site plan, and found it to be deficient in various respects.  *Id.*  He also concluded that 37-39 High Street could not be a lawful nonconforming use, as the property had been vacated and unoccupied for a period in excess of one year as evidenced by water department records.  *Id.*  On June 23, 2009, the Planning Board convened to review Kowalczyk's proposed site plan.  *Id.*, Ex. PP. Counsel for Kowalczyk appeared before the Planning Board in an attempt to negotiate a compromise through which Kowalczyk's property could be "grandfathered" in as a multiple dwelling nonconforming use.  *Id.*, Ex. PP at 7.  However, Members of the Planning Board responded that the Board could not approve a site plan that was not in compliance with the zoning code, and that Kowalczyk would be required to apply for a variance to the Zoning Board of Appeals.  *Id.* at 8-9. Consequently, Kowalczyk's site plan for 37-39 High Street was rejected.  *Id.* at 9.  Nowhere in the record before the Court is there any evidence that Kowalczyk subsequently applied to the Zoning Board of Appeals for a variance.

Despite the Planning Board's rejection of his site plan, on November 30, 2009, James Carnell ("Carnell"), the then Code Enforcement Official for the Village, issued Kowalczyk a building permit and a certificate of occupancy for four apartments and an office space for property management, all located in the front building.  Doc. 56-1, Ex. J, Ex. K.  On December 11, 2009, Carnell issued Kowalczyk another building permit to renovate two existing apartments in the back building, and on February 5, 2010, he issued Kowalczyk a conditional certificate of occupancy for those two apartments.  *Id.* Ex. L, Ex. M.

On November 3, 2010, Kowalczyk's property was issued a code and ordinance violation notice for rodent and insect infestations.  Doc. 68, Ex. QQ.  In August 2011, in accordance with a

Village law enacted in 2010 requiring every owner of a rental property to file an application for a rental permit, Kowalczyk submitted a written application to rent a total of six apartments at 37-39 High Street.  Doc. 70 ¶ 24, Ex. A.   Pursuant to Kowalczyk's rental permit application, a Village Code Enforcement Officer conducted a mandatory premises inspection.  *Id.* ¶¶ 25-26, Ex. B.  The inspection uncovered violations of the New York State Fire Code and the New York State Property Maintenance Code.  *Id.* ¶ 26, Ex. B.  On August 23, 2011, James Snowden, the Building Inspector, issued an order to Kowalczyk to remedy all code and ordinance violations. *Id.*, Ex. B.  The order required all tenants to vacate the building immediately.  *Id.*

**B.  Plaintiff Pericic's Property at 92 High Street**

On July 8, 2005, Alil Pericic, a non-citizen alien and a resident of Ridgewood, New York, together with his partner Aida Markisic ("Markisic"), purchased real property located at 92 High Street ("92 High Street") in the Village.  Compl. ¶ 1(a); Doc. 83 ¶ 3;  Defs.' 56.1 Stmt. ¶ 54.  For a period of years, 92 High Street, which was a nine family apartment building, had been a lawful multiple dwelling nonconforming use, but was ultimately left vacant and abandoned before Pericic bought it.  Defs.' 56.1 Stmt. ¶¶ 53, 55; Doc. 68, Ex. LLL.  Upon purchasing the property, Pericic applied for a building and zoning permit to repair the existing structure.  Doc. 68, Ex. AAA.  On July 12, 2005, Flora conducted an inspection of 92 High Street, and on August 9, 2005, she issued Pericic a building permit to repair the existing nine-family dwelling and to bring it into compliance with the New York State Building Code.  *Id.*, Ex. BBB, Ex. CCC.

On October 19, 2005, Flora revoked the permit because required architectural plans had not been submitted.  Doc. 83-1 at 39-41.   However, Pericic later submitted the plans and the revocation of the permit was rescinded.  *Id.*  Pericic proceeded with his repairs for at least one year after the permit was originally issued, and Flora made inspections on the property

throughout that time.  *Id.* at 40:2-12.  The building permit expired on August 9, 2006.  Doc. 83, Ex. CCC.  Pericic continued construction at the premises thereafter.  Defs.' 56.1 Stmt. ¶ 60.

On February 22, 2007, Flora issued a Stop Work Order upon 92 High Street due to violations of the Village Code and zoning ordinances.  Doc. 68, Ex. FFF.  On August 10, 2007, Markisic submitted an application for a special use permit to renovate the existing structure at 92 High Street into a six or seven family home.  *Id.*, Ex. GGG.  The application came before the Planning Board on August 28, 2007, November 27, 2007, April 22, 2008, July 22, 2008, and August 26, 2008.  Defs.' 56.1 Stmt. ¶ 63.  Barbarite was present at each Planning Board meeting.  Doc. 83 ¶ 10. At the meeting on July 22, 2008, Barbarite explained that 92 High Street had no "grandfathered" nonconforming use rights because it had been left vacant for a number of years, thus eliminating its status as a lawful nonconforming use.  Doc. 68, Ex. LLL.  On August 26, 2008, the Planning Board unanimously voted to deny the special use permit.  *Id.*, Ex. MMM. Evidence in the record indicates that Pericic and Markisic may have made an application to the Zoning Board of Appeals for a variance.  Doc. 68, Ex. NNN.  However, neither Plaintiffs nor Defendants have set forth any facts showing that such an application was in fact made, nor that the Zoning Board of Appeals reached a final decision on the matter.

### C.  Disputed Facts

For reasons set forth at greater length below, the following facts—though disputed by the parties vigorously and at length—are not material to the inquiry currently before this Court.

#### 1.  Racial Animus

Plaintiffs have represented that Barbarite made various derogatory statements indicating racial and national-origin based animus throughout his tenure as Deputy Village Manager and as

Village Manager.  Doc. 56-1, Ex. O; Doc. 56-2, Ex. R.  Barbarite denies all such allegations. Defs.' 56.1 Stmt. ¶ 26.

### 2.  Intimidation by Barbarite and Jenkins as to Flora

Plaintiffs have offered evidence suggesting that Barbarite and Jenkins pressured Flora to take unjustified, adverse action against the Plaintiffs.  Doc. 56-2, Ex. R at 58-60.  Specifically, Flora stated in her deposition that they informed her that she was to issue vacate orders for unlawful multiple dwellings to various properties including the Plaintiffs', and if she did not do so she would be terminated.  *Id.*; *see* Doc. 68, Ex. HH, Ex. II, Ex. JJ, Ex. FFF.  Defendants deny any such allegations.  Defs.' 56.1 Stmt. ¶ 34, Doc. 70 ¶ 20.

### 3.  Vacancy at Plaintiffs' Properties

As described above, Defendants set forth facts suggesting that both properties were vacant before Kowalczyk and Pericic purchased them.  Doc. 68, Ex. D, Ex. T, Ex. TT, Ex. UU. Plaintiff Kowalczyk disputes this fact and presents contrary evidence.  *Id.* Ex. S; Doc. 56-2, Ex. P; Doc. 78 ¶ 5(d).  However, it appears that counsel for Kowalczyk may have conceded that the property was vacant before it was purchased based on Village Planning Board meeting minutes. *See* Doc. 68, Ex PP at 10-11.  Plaintiff Pericic admits that 92 High Street was vacant and abandoned before he purchased it.  Doc. 84 ¶ 53.

## II. Procedural History

This matter was commenced on August 5, 2008.  *See* Compl.  The Honorable Kenneth M. Karas, to whom this case was previously assigned, held a pre-motion conference on July 29, 2011, and granted leave to the parties to file the instant motions.  Doc. 52.  On January 19, 2012, the action was reassigned to this Court.

On April 16, 2012, Plaintiffs' counsel alerted the Court that on April 11, 2012, he had filed an Article 78 proceeding in the Supreme Court of the State of New York, Sullivan County, which resulted in a Final Order and Decree by default judgment against the Village of Monticello.  On August 20, 2012, Defendants' counsel informed the Court that the April 11, 2012 Final Order and Decree had been vacated on June 25, 2012 by Justice LaBuda of the Sullivan County Supreme Court.

**III. Summary Judgment Standard**

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.,* 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir.2009)). A fact is "material" if it might affect the outcome of the litigation under the relevant law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts to the party opposing summary judgment to present evidence that is sufficient to satisfy every element of the claim and "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (quotation marks omitted).

When cross motions for summary judgment are made, each party's motion must be assessed on its own merits.  *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.,* 667 F.2d 305, 314 (2d Cir.1981)). The court must view

the evidence in the light most favorable to the party opposing the motion, *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011) *cert. denied*, 132 S. Ct. 2439, 182 L. Ed. 2d 1063 (U.S. 2012), and "in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012) (quoting *Morales*, 249 F.3d at 121). However, in opposing a motion for summary judgment, the nonmoving part may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995).

## IV. Discussion

### A. Ripeness

Under Article III of the Constitution, a case or controversy must be ripe for adjudication in order to prevent judicial entanglement "in abstract disagreements over administrative policies," and to avoid interference with an administrative decision before it "has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148-149 (1967) (internal quotation marks omitted). In *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172 (1985), the Supreme Court articulated a two-prong ripeness test applicable to land use disputes. First, a government regulatory entity must reach a "final decision" on the matter, also known as "prong-one ripeness." 473 U.S. at 186; *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005). Second, *Williamson* "prong-two ripeness" requires a plaintiff to seek compensation through an available state procedure before bringing suit in federal court. 473 U.S. at 194; *Murphy*, 402 F.2d at 349.

### 1. Applicability of Ripeness Inquiry

"[W]hether pursued as a takings claim under the Fifth Amendment or as violations of equal protection or due process," a land use challenge must be ripe for review in order to be justiciable. *Lost Trail LLC v. Town of Weston*, 289 F. App'x 443, 444 (2d Cir. 2008); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88-89 (2d. Cir. 2002) (The ripeness requirement set forth in *Williamson*, "although announced in a [Fifth Amendment] takings context, has been extended to equal protection and due process claims asserted in the context of land use challenges.") (collecting cases). Here, Plaintiffs have brought substantive due process and equal protection claims, and purport to have brought procedural due process claims. Thus, the two-prong *Williamson* ripeness test must be met in order for the Court to retain jurisdiction over this matter. As set forth below, because Plaintiffs have failed to meet prong-one ripeness in failing to pursue a final decision, the Court finds this matter is not yet ripe for adjudication, and need not reach the issue of prong-two ripeness.[5]

### 2. Final Decision

A final decision is a "definitive position on the issue that inflicts an actual, concrete injury." *Williamson*, 473 U.S. at 193. A plaintiff must obtain a final, definitive decision from a local zoning authority not only to guarantee the development of a full record for judicial review,

---

[5] Moreover, prong-two ripeness does not apply to claims that do not implicate the absence of just compensation pursuant to the Fifth Amendment. *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 97 (2d Cir. 1992); *Vic's Super Serv., Inc. v. City of Derby*, 3:04 CV 2146(JBA), 2006 WL 2474918, at *4 (D. Conn. Aug. 25, 2006) (citing *Murphy*, 402 F.3d 349). This is so because the prong-two ripeness "requirement that a plaintiff seek compensation in state court is . . . derived from the Takings Clause." *Southview*, 980 F.2d at 97 (citing *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.3d 1398, 1404 (9th Cir. 1989), *cert. denied*, 494 U.S. 1016 (1990)). Thus, substantive due process claims alleging arbitrary and capricious government conduct, or equal protection claims alleging that similarly situated individuals received different treatment—which are "largely unrelated" to the "Fifth Amendment's proviso that only takings without just compensation infringe that Amendment"—are not subject to prong-two ripeness. *Southview*, 980 F.2d at 97; *Murphy*, 402 F.3d at 349 (quoting *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 (1997)). Thus, since Plaintiffs do not allege claims stemming from the Fifth Amendment Takings Clause, prong-two ripeness does not apply here. However, even assuming *arguendo* the second prong of *Williamson* did apply, it would be of no moment, as Plaintiffs have failed to demonstrate that they have satisfied the first ripeness prong.

but also to ensure that "all non-constitutional avenues of resolution have been explored first, perhaps obviating the need for judicial entanglement." *Murphy*, 402 F.3d at 348, 354.   This requirement thus underscores the notion that land use disputes are "uniquely matters of local concern more aptly suited for local resolution." *Id*. at 348.   Without a final decision, this Court cannot assess Plaintiffs' substantive due process claims, suggesting they have been deprived of their property arbitrarily and capriciously, or their equal protection claims, which suggest that similarly situated landowners were treated differently than Plaintiffs.   *See Goldfine v. Kelly*, 80 F. Supp. 2d 153, 159 (S.D.N.Y. 2000) (internal citation omitted).

    A plaintiff who has applied for permission to develop property and is subsequently rejected does not have a ripe claim until she further seeks a variance that would enable her development plans to go forward.   *Id.*   (citing *Williamson*, 473 U.S. at 188.)   Thus, as a "jurisdictional prerequisite," prong-one ripeness in the Second Circuit "conditions federal review on a property owner submitting at least one meaningful application for a variance."   *Murphy,* 402 F.3d at 348 (citing *Williamson*, 472 U.S. at 190; *MacDonald, Sommer & Frates v. Yolo Cty.*, 477 U.S. 340, 352 n.8 (1986)).   To illustrate, in *Dougherty*, the plaintiff, after receiving a cease and desist order while renovating his property as a nonconforming use, applied for a permit to continue his construction, which was denied.   282 F.3d at 86.   Thereafter, the plaintiff appealed the denial to the town board of zoning appeals, but did not apply for a variance, despite the board's suggestion that he do so.   *Id.* at 86-87.   The district court concluded, and the court of appeals affirmed, that because plaintiff had failed to seek a variance, he had not received a final decision and that his substantive due process and equal protection claims were unripe.   *Id.* at 86, 89.   Similarly, in *Norton v. Town of Islip*, 239 F. Supp. 2d 264 (E.D.N.Y. 2003) *aff'd*, 77 F. App'x 56 (2d Cir. 2003), the plaintiff's failure to seek a variance was again determinative.

There, the defendant town denied plaintiff's application to rent units on his property, a nonconforming use.  239 F. Supp. 2d. at 266.  The town advised the plaintiff to make an application to the zoning board of appeals, but he never did so.  *Id.* at 267.  Having failed to obtain a final decision, the court found the plaintiff's substantive due process claims were not yet ripe.  *Id.* at 269.

The issue of ripeness in the case at bar is wholly analogous to *Dougherty* and *Norton*. After learning that his building permit was rejected, Kowalczyk applied for a zoning variance on March 31, 2002.  Doc. 68, Ex. O.  But soon thereafter, he withdrew his application in reliance on Village Attorney Jankiewicz's opinion that the variance should be granted.[6]  Doc. 78 ¶ 18. Moreover, after his site plans were rejected by the Planning Board in 2009, Kowalczyk was told to apply for a variance to the Zoning Board of Appeals, but he failed to do so.  Doc. 68, Ex. PP at 8-9.  Although the Village issued Kowalczyk a "barrage of contradictory signals regarding his nonconforming use," *Norton*, 239 F. Supp. 2d. at 266—for instance, granting his building permits in November and December 2009 after rejecting his site plan several months earlier, *see* Doc. 56-1, Ex. J, Ex. L—Kowalczyk nevertheless failed to obtain a final decision as to how he could develop his property.  As the Zoning Board of Appeals has the authority to determine whether zoning regulations were properly applied to him or not, *see* N.Y. Town Law § 267-b, failure to seek a variance "leaves undetermined the permitted use of the property in question." *Murphy*, 402 F.3d at 353 (plaintiffs' failure to seek a variance after being issued a cease and desist order charging violations of local zoning regulations demonstrated that the case was not ripe for review in the district court).

---

[6] Jankiewicz's letter was merely a statement of her opinion on the matter; it was not a final decision reached by the Zoning Board of Appeals.  *See* Doc. 56-2, Ex. P.

Pericic did not obtain a final decision, either.  Markisic, who co-owned 92 High Street, merely submitted an application to the Planning Board for a special-use permit in 2007, and her application was denied in 2008.  Doc. 68, Ex. GGG, Ex. MMM.  As the pertinent case law makes clear, a denial of a permit application is simply not enough to meet prong-one ripeness. *See, e.g.*, *Grossi v. City of New York*, No. 08-VB-1083 (RRM) (ALC), 2009 WL 4456307, at *4 (E.D.N.Y. Nov. 30, 2009) (citing *Goldfine*, 80 F. Supp. 2d at 159).  Although there is evidence suggesting that Pericic may have appealed to the Village Zoning Board of Appeals, *see* Doc. 68, Ex. NNN, there are no facts in the record showing that such an application was, in fact, made, nor that the Zoning Board of Appeals ever rendered such a decision.  *Cf. Dougherty*, 282 F.3d at 86-87 (even after plaintiff appealed to zoning board of appeals, but never formally sought a variance, a final decision was not reached and the plaintiff's claims were therefore unripe).

Accordingly, Plaintiffs' substantive due process and equal protection claims pursuant to 42 U.S.C. §§ 1981 and 1983 are not yet ripe.[7]  Plaintiff Kowalczyk's motion for partial summary

---

[7] Even if Plaintiffs could demonstrate that they obtained a final decision from the Zoning Board of Appeals, thus rendering this matter ripe, there would still be a question of fact as to whether Plaintiff Kowalczyk had a vested property interest in the use of his property as a multiple dwelling.  To possess a federally protected property interest, a person must have a legitimate claim of entitlement to it.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Such a claim does not arise from the Constitution, but rather from an independent source such as state or local law. *Id.*; *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 629 (2d Cir. 1996); *G.I. Home Developing Corp. v. Weis*, No. 07-CV-4115 (DRH), 2009 WL 962696, at *5 (E.D.N.Y. Mar. 31, 2009).  "An abstract need, desire or unilateral expectation is not enough." *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002) (citing *Roth*, 408 U.S. at 577).  Under New York law, a nonconforming use that predates the enactment of a restrictive zoning ordinance is a vested right and is entitled to constitutional protection.  *Norton*, 239 F. Supp. 2d at 270 (citing *Town of Somers v. Camarco*, 308 N.Y. 537, 541 127 N.E.2d 327 (N.Y.1955); *Keller v. Haller,* 226 A.D.2d 639, 641 N.Y.S.2d 380 (2d Dept.1996)).  A vested nonconforming use is defined as one that came into existence before enactment of the zoning ordinance that prohibits its use, and that is continuously maintained after the zoning changes take effect.  *Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1065 (2d Cir. 1989) (citing *City of New York v. Bilynn Realty Corp.,* 118 A.D.2d 511, 499 N.Y.S.2d 1011, 1014 (1st Dep't 1986)).

There are various facts in the record suggesting that 37-39 High Street was vacant and unoccupied for a period of time greater than one year before Kowalczyk purchased it, though he denies this.  If it had been unoccupied for such a time, as Defendants submit, the nonconforming use—the maintenance of a multiple dwelling—would have been vacated, and pursuant to Village Code § 280-43, Kowalczyk would have no vested right to maintain it as such.  Thus, depending on whether or not the property had been vacated for one year or longer before he bought it, he may or may not have a vested property right in the maintenance of a multiple dwelling.

judgment on his substantive due process claim is therefore DENIED, and Defendants' motion for summary judgment on Plaintiffs' substantive due process and equal protection claims is GRANTED.

### 3.  Futility

To the extent Plaintiffs argue that their failure to pursue a final decision is excused by the doctrine of futility—under which a plaintiff need not obtain a final decision if she can demonstrate, by more than mere allegations, that to do so would be futile—these claims must also fail.  *Southview*, 980 F.2d at 98; *Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 407 (E.D.N.Y. 2008). "[W]hen a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied," seeking a final decision would be futile.  *Murphy*, 402 F.3d at 349.  Plaintiffs suggest that Defendants—particularly Barbarite— were openly hostile to their development proposals and made clear that they would not gain approval.  Doc. 83 ¶ 10.  Mere allegations of open hostility, however, are insufficient to invoke the futility exception.  *Roman Catholic Diocese of Rockville Centre, New York v. Inc. Vill. of Old Westbury*, No. 09 CV 5195 (DRH) (ETB), 2011 WL 666252, at \*16 (E.D.N.Y. Feb. 14, 2011); *Homefront Org.*, 570 F. Supp. 2d at 408 (collecting cases).  Hostility alone, while perhaps unjustifiable, does not make certain that a zoning variance would be opposed or rejected. *Homefront Org.*, 570 F. Supp. 2d at 408; *Country View Estates @ Ridge LLC v. Town of Brookhaven,* 452 F.Supp.2d 142, 150 (E.D.N.Y.2006) ("While the ripeness doctrine does not require litigants to engage in futile gestures such as to jump through a series of hoops, the last of which is certain to [be] obstructed by a brick wall, the presence of that brick wall must be all but

Plaintiff Pericic, on the other hand, does not dispute that 92 High Street was vacant for a period of time greater than one year before he purchased it.  It would likely be the case, therefore, that his property was no longer a lawful nonconforming use as a multiple dwelling, and that he did not have a vested property right in the maintenance of it as such.  However, since neither Plaintiff received a final decision, the issue of vacancy of the properties is not relevant to the Court's present inquiry.

certain for the futility exception to apply.") (internal citation, quotation marks, and ellipses omitted). Thus, even if Plaintiffs have set forth evidence that the Village, and Barbarite specifically, were hostile towards their development plans, they have not established that the Zoning Board of Appeals—the entity charged with granting variances, *see* N.Y. Town Law § 267-b—has made clear that any application by the Plaintiffs would be denied. *Lost Trail*, 289 F. App'x at 445. Absent such a showing, "the noted disagreement is not enough, by itself, to demonstrate futility." *Id.*

### 4. Plaintiffs' Purported Procedural Due Process Claims

In his moving papers, Kowalczyk argues that despite not having specifically alleged a procedural due process claim in his complaint, this Court should nonetheless recognize the existence of such a claim—and moreover, grant him summary judgment on it. Doc. 59 at 11-14. Federal Rule of Civil Procedure 15(b) enables a district court to consider claims "outside those raised in the pleadings so long as doing so does not cause prejudice." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000). Assuming *arguendo* this Court were to find that no prejudice would result to Defendants if a procedural due process claim were considered, despite Kowalczyk's "imprecise complaint," *id.*, such a claim would nevertheless fail the prong-one ripeness test. *See supra* Part IV.A.2.

Furthermore, "[a] finding that a substantive due process claim is unripe may render a related procedural due process claim unripe as well." *Norton*, 239 F. Supp. 2d at 269 (citing *Dougherty*, 282 F.3d at 88-89.) In *Norton*, however, the district court did not find the plaintiff's procedural due process claim unripe, despite finding his substantive due process claim was unripe, because the gravamen of his complaint arose from the procedural due process claim— namely, that he was not afforded notice and an opportunity to be heard before being deprived of

his property.  *Id.* at 269, 273.  Here, however, Plaintiffs' claims are rooted in their allegations of arbitrary and capricious government conduct that deprived them of their property interests, and not the government's failure to provide them with predeprivation protections.

Thus, insofar as Plaintiffs' have alleged a procedural due process claim, it is not yet ripe before this Court.  Plaintiff Kowalczyk's motion for partial summary judgment on his purported procedural due process claim is therefore DENIED, and Defendants' motion for summary judgment on Plaintiffs' purported procedural due process claims is GRANTED.

## B.  Plaintiffs' Claims Pursuant to 42 U.S.C. §§ 1985 and 1986

Defendants have additionally moved for summary judgment on Plaintiffs' claims pursuant to 42 U.S.C. §1985, which provides, in pertinent part, that

> [i]f two or more persons in any State or Territory conspire . . .  for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Section 1985(3), however, "provides no substantive rights itself but merely 'provides a remedy for violation of the rights it designates,'" *Homefront Org.*, 570 F. Supp. 2d at 410 n.9 (quoting *Spencer v. Casavilla,* 903 F.2d 171, 174 (2d Cir.1990)), and "requires [a] plaintiff to establish that defendants sought to deprive [him] of a right covered by the Constitution or other laws." *Rosendale v. Iuliano*, 63 F. App'x. 52, 52 (2d Cir. 2003) (internal citation and quotation marks omitted).  Here, Plaintiffs' conspiracy claims pursuant to §1985(3) are premised upon the same alleged constitutional violations that are not yet ripe before this court—namely, their substantive due process, procedural due process, and equal protection

claims pursuant to 42 U.S.C. § 1983.  Accordingly, Plaintiffs' § 1985 conspiracy claims are not ripe for review, either.

Additionally, Defendants have moved for summary judgment on Plaintiffs' claims pursuant to 42 U.S.C. § 1986, which provides, in relevant part, that

> [e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act . . .

42 U.S.C. § 1986.  Because Plaintiffs' § 1986 claims are, by their nature, premised upon a violation of § 1985, the Court finds them to be unripe as well.  Therefore, Defendants' motion for summary judgment on Plaintiffs' §§ 1985 and 1986 claims is GRANTED.

### C.  Plaintiffs' Claims for Declaratory Relief

Finally, Plaintiffs allege that pursuant to 42 U.S.C. § 1983, as well as pursuant to New York law by application of the common law principle of estoppel, they are entitled to a declaratory judgment stating that the certificates and permits they received were improperly cancelled and thus remain in full force and effect.  To the extent this cause of action arises pursuant to 42 U.S.C. § 1983, the underlying constitutional violations have already been deemed not yet ripe for adjudication.  *See supra* Part IV.A.2, 4.  As the only remaining claims before this Court are Plaintiffs' New York state law claims, the Court declines to exercise supplemental jurisdiction over them.  28 U.S.C. § 1367(c)(3).

### D.  Plaintiffs' Claims Pursuant to 42 U.S.C. § 1988(b)

Plaintiffs have alleged they are entitled to attorneys' fees pursuant to 42 U.S.C. § 1988(b), which affords courts discretion in any action seeking enforcement of §§ 1981, 1983, 1985 or 1986 to award reasonable attorneys' fees to the prevailing party. 42 U.S.C. § 1988(b).

Because none of those provisions are actionable here, nor are Plaintiffs prevailing parties, no attorneys' fees shall be awarded.

## V. Conclusion

For the reasons set forth above, Plaintiff Kowalczyk's motion for partial summary judgment on the issue of liability is DENIED.  Defendants' cross motion for summary judgment is GRANTED in full.  The Clerk of the Court is respectfully directed to enter judgment in favor of Defendants.

It is SO ORDERED.

Dated:      September 25, 2012
            White Plains, New York

                                                    Edgardo Ramos, U.S.D.J.